# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BMT-NW ACQUISITION, LLC, | ) | Case No. 14-10302 (CSS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| CHARLES A. STANZIALE, JR., solely in his | ) | |
| capacity as the Chapter 7 Trustee of | ) | |
| BMT-NW Acquisition, LLC. | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No.: 16-50027 (CSS) |
| | ) | |
| v. | ) | |
| | ) | |
| BROWN-MINNEAPOLIS TANK | ) | |
| ULC, LLC, et al. | ) | |
| Defendants. | ) | |

## OPINION[1]

**MARGOS EDELSTEIN**
James E. Huggett
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

Counsel to all Defendants
(except Longroad Asset
Management, LLC)

**McCARTER & ENGLISH, LLP**
Matthew J. Rifino
405 N. King Street, 8th Floor
Wilmington, DE 19801
-and-
Charles A. Stanziale
Matthew Wapner
Deirdre E. Burke
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Counsel to Charles A Stanziale,
Jr., the Chapter 7 Trustee

Dated: April 10, 2018
Sontchi, J. _Christopher Sontchi_

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION[2]

Before this Court is Defendants' Motion to Dismiss with prejudice the Trustee's Second Amended Complaint.  The Second Amended Complaint seeks (i) avoidance of fraudulent transfers under Section 548 of the Bankruptcy Code as to BMT Acquisitions, Broad Street, Graver, BMT-WA, and ULC; (ii) avoidance of state law fraudulent transfer pursuant to 11 U.S.C. § 544 and 6 Del. § 1304 as to defendants BMT Acquisitions, Broad Street Tank, BMT-WA, ULC, and Graver; (iii) avoidance of preferential transfers pursuant to 11 U.S.C.  §§ 547 and 550 as to BMT Acquisition, Broad Street, Graver, BMT-WA, and ULC; (iv) breach of fiduciary duties as to all Defendants; (v) declaratory relief as to Defendant Longroad to pierce the corporate veil; (vi) turnover of payments due and owed as property of the estate under Section 542 of the Bankruptcy Code as to all Defendants; (vii) and disallowance of claims pursuant to Section 502(d) of the Bankruptcy Code as to all Defendants.

For the reasons set forth below, the Court will grant the motion to dismiss with prejudice, in part, on Claim Eleven for avoidance of preferential transfer, Claims Thirteen through Fifteen for avoidance of preferential transfer, Claim Sixteen for breach of fiduciary duties as it relates to ULC, BMT Acquisition, BMT-WA, and Graver, Claim Seventeen, Claim Eighteen for turnover of payments, and Claim Nineteen for disallowance of claims, because the Trustee has not pleaded sufficient facts in support of his allegations.  The Court will deny the motion to dismiss with prejudice, in part, on

---

[2] Undefined terms used in the Introduction have the meaning set forth below.

Claims One through Ten for avoidance of fraudulent transfers, Claim Twelve for avoidance of preferential transfers, and Claim Sixteen for breach of fiduciary duties as it relates to Broad Street because the trustee has plead sufficient facts to support plausible claims.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), (B), and (F). The Court has the judicial authority to enter a final order.

## STATEMENT OF FACTS

### A. Procedural Background

BMT-NW Acquisition, LLC (the "Debtor") filed a voluntary petition for Chapter 7 relief on February 14, 2014 (the "Petition Date.") Charles A. Stanziale, Jr. (the "Trustee") was appointed as the Trustee for the Debtor on or about the Petition Date.

The Trustee filed a complaint initiating this adversary proceeding on February 12, 2016. The Trustee asserted causes of action for avoidance of fraudulent transfers, avoidance of preferential transfers, breach of fiduciary duty, declaratory relief to pierce the corporate veil, turnover of payments, and disallowance of claims against six defendants:

1. Brown-Minneapolis Tank ULC ("ULC");

2. Longroad Asset Management, LLC ("Longroad");

3. Broad Street Holdings Co., Inc. ("Broad Street");

4.  BMT Acquisition, LLC ("BMT Acquisition");

5.  BMT-WA Contracting, LLC ("BMT-WA"); and

6.  Graver Tank Co. ("Graver")

The Trustee filed an amended complaint on February 16, 2016. Longroad subsequently moved to dismiss Claims Sixteen and Seventeen on June 2, 2016. The Court granted Longroad's motion to dismiss on March 6, 2017.[3] First, the Court found the allegations insufficient to support a plausible claim that Longroad owed any fiduciary duty to the Debtor. Secondly, assuming that Longroad owed any fiduciary duty to the Debtor, the Court determined that the allegations still failed to support a plausible claim that Longroad breached any such duty. Lastly, the Court found the allegations to support a plausible claim against Longroad for the turnover of payments insufficient.

The Court provided that the Trustee could file an amended complaint within thirty days containing "much more specific allegations as to the existence and breach of any fiduciary duty by Longroad and in support of a claim for turnover."[4] The Trustee then filed a second amended complaint ("Second Amended Complaint") on April 5, 2017.[5] ULC, Broad Street, BMT Acquisition, BMT-WA, and Graver (collectively, the "Defendants") filed a motion to dismiss ("Motion to Dismiss") the Second Amended

---

[3] Adv. Pro. No. 16-50027, D.I. 20 ("Order on Motion to Dismiss") at ¶¶ 1-2. Count Sixteen brought a claim for relief for breach of fiduciary duty as to all defendants. Count Seventeen brought a claim for alleged turnover of property of the estate.

[4] Id. at ¶ 2 (emphasis in original).

[5] Adv. Pro. No. 16-50027, D.I. 63 ("Second Amended Complaint").

Complaint in its entirety with prejudice on May 26, 2017.[6]    Briefing concerning

Defendants' Motion to Dismiss was completed on August 16, 2017.  The issue is now ripe

for review and fully briefed.

## B.  Debtor's Formation

Longroad, a Connecticut based private equity fund, formed the Debtor on June 11,

2011 in order to acquire the assets and business operations of Brown-Minneapolis Tank-

Northwest, LLC ("BMTN").[7]   Longroad also formed Defendant Broad Street, a Delaware

limited liability corporation and the Debtor's sole member.[8]    Longroad's managing

directors, the Debtor's managers at the time of its formation, and Broad Street's initial

board of directors consisted of the same four individuals: Richard Latto, Anne Whitman,

Steve Zambito, and Leon Komkov.[9]   The Debtor subsequently entered into five contracts

after its formation.

## C.  Loan Purchase and Sale Agreement

The Debtor entered into a loan purchase and sale agreement with JPMorgan Chase

Bank, N.A. ("JPMorgan") on June 16, 2011.[10]    Pursuant to the agreement, the Debtor

---

[6] Adv. Pro. No. 16-50027, D.I. 70 ("Motion to Dismiss").  Only Defendants ULC, Broad Street, BMT Acquisition, BMT-WA, and Graver – not Longroad – filed the Motion to Dismiss the Second Amended Complaint.  Thus, the term "Defendants" used in this Opinion refers only to ULC, Broad Street, BMT Acquisition, BMT-WA, and Graver, collectively.  It excludes Longroad, who is not a moving party.

[7] Second Amended Complaint at ¶ 16.

[8] Neither the Second Amended Complaint nor the Motion to Dismiss identify the exact date Longroad formed Broad Street.

[9] Second Amended Complaint at ¶¶ 16-24.

[10] *Id*. at ¶ 36.

purchased two delinquent notes for money borrowed by BMTN from JPMorgan in an aggregate principal balance of $2,963,178.29 for a purchase price of $1,352,127.18.[11]

## D. Secured Revolving Credit Agreement

The Debtor also entered into a secured revolving credit agreement ("Credit Agreement") with Broad Street in the principal amount of $3 million on June 16, 2011.[12] The Debtor used a portion of these funds to purchase the delinquent notes.[13]

## E. Amendment to the Revolving Credit Agreement

On June 17, 2011, the Debtor and BMTN amended the Credit Agreement ("Amended Credit Agreement.")[14] Pursuant to the Amended Credit Agreement, the Debtor agreed to make additional loans to BMTN of up to $367,598, with amounts due on June 30, 2011.[15]

## F. Foreclosure Agreement

The debtor acquired the assets of BMTN on July 29, 2011 under a foreclosure agreement.[16] The agreement stated that BMTN acknowledged that its liabilities to the Debtor were secured by substantially all of BMTN's assets, that an aggregate principal amount of $3,307,433 was due and owing under the Amended Credit Agreement, and that all cure periods had passed.[17] The foreclosure agreement also stated that BMTN received independent advice from its financial advisor and/or appraisers stating the

---

[11] Id.

[12] Second Amended Complaint at ¶ 37.

[13] Id. at ¶ 37.

[14] Id. at ¶¶ 37-40.

[15] Id.

[16] Id. at ¶ 41.

[17] Id.

aggregate outstanding principal amount of the liabilities significantly exceeded both the fair value of BMTN's business, as well as the aggregate liquidation value of BMTN's assets.[18]    Furthermore, the Debtor also acquired BMTN's specified trade payables aggregating to $705,815, in addition to other liabilities under the foreclosure agreement.[19] Along with the Debtor's acquisition of BMTN's assets, Longroad simultaneously acquired the assets of Brown-Minneapolis Tank Co. and Graver.[20]

### G. Loan and Security Agreement

The Debtor and the Defendants, except Broad Street, entered into a loan and security agreement with Private Bank on May 12, 2012,[21] under which the Debtor and the Defendants, except for Broad Street, entered as borrowers with Private Bank as the sole lender.[22]    Private Bank agreed to make available to the Debtor and the co-borrower Defendants a revolving credit facility in an amount not to exceed $10 million and letters of credit in the aggregate amount not to exceed $5 million.[23]

---

[18] *Id*. at ¶ 43.

[19] Second Amended Complaint at ¶¶ 41-44.  The other liabilities, in addition to the trade payables, included specified customer deposits, certain obligations arising under customer contracts, and obligations pursuant to certain Employee Plans.

[20] *Id*. at ¶ 56.  Note that "Brown-Minneapolis Tank Co." is not listed as a defendant in this adversary proceeding.  The Second Amended Complaint distinguishes between three companies with similar names: ULC; Brown Minneapolis Tank Co., not stated by the Trustee as a defendant in this action; and Brown-Minneapolis Tank Canada Co., not stated by the Trustee to be a defendant in this action.

[21] *Id*. at ¶ 57.  Note, the Second Amended Complaint also lists "Brown Minneapolis Tank Canada Co." as a co-borrower in the Loan and Security Agreement.  "Brown Minneapolis Tank Canada Co." is neither listed nor stated to be a defendant in the adversary proceeding in the Second Amended Complaint.

[22] *Id*.

[23] *Id*. at ¶¶ 57-58.

**H.  The Debtor's Asset Transfers and Financial Performance**

Between October 30, 2012 and February 13, 2014, the Debtor made asset transfers to each of the Defendants.[24]  Meanwhile, the Debtor suffered financially.  It reported net losses of $302,666 in 2011, $66,381 in 2012, and $940,224 in 2013.[25]  Its sales revenue declined from roughly $13.1 million to $7.2 million between 2012 and 2013.[26]

a. **Debtor and BMT Acquisition:**  Debtor made cash transfers to BMT Acquisition on October 30, 2012, November 19, 2012, December 28, 2012, February 21, 2013, August 30, 2013, and December 4, 2013, totaling $776,367.[27]

b. **Debtor and Broad Street:**  Debtor made cash transfers to Broad Street on April 5, 2013, June 6, 2013, August 1, 2013, February 7, 2014, and February 13, 2014, totaling $601,000.[28]

c. **Debtor and Graver:**  Debtor made cash transfers to Graver on July 11, 2012 and September 5, 2013, totaling $215,000.[29]

d. **Debtor and BMT-WA:**  Debtor made cash transfers to BMT-WA on September 26, 2012 and October 30, 2012, totaling $126,000.[30]

---

[24] *Id.* at ¶¶ 63-74.

[25] *Id.* at ¶¶ 51-55.

[26] *Id.*

[27] *Id.* at ¶¶ 36-68.

[28] *Id.*

[29] *Id.*

[30] *Id.*

   e. **Debtor and ULC:**  Debtor made cash transfers to ULC on September 26, 2012

   and October 18, 2012, totaling $75,000.[31]  Additionally, the Debtor transferred

   $2,197,440 in trade accounts receivable to ULC in exchange for a receivable

   from ULC.[32]

## LEGAL DISCUSSION

### A.  Motion to Dismiss Standard.

The Defendants seek dismissal of the action on the grounds that the Trustee has failed

to state a claim for which relief can be granted.[33]  This motion, under Fed. R. Civ. P.

12(b)(6), tests the sufficiency of factual allegations pleaded in the Plaintiff's complaint.[34]

With the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*,[35]

"pleading standards have shifted from simple notice pleading to a more heightened form

of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a

motion to dismiss."[36]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading

requirement applies to all civil suits in federal courts.[37]  "Threadbare recitals of the

---

[31] *Id.* at ¶ 67.

[32] *Id.*

[33] *See* Motion to Dismiss.

[34] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)); Fed. R. Bankr. P. 7012 incorporates Rule 12(b)(6) of the Federal Rules of Civil Procedure in adversary proceedings; Fed. R. Civ. P. 12(b)(6).

[35] 550 U.S. 544 (2007); 556 U.S. 662 (2009).

[36] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[37] *See Fowler*, 578 F.3d at 210.

elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss.[38]  Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."[39]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40]  Determining whether a complaint is "facially plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not effectively shown, that the pleader is entitled to relief."[41]

After *Iqbal*, the Third Circuit has instructed courts to "conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[42]  The court "must then determine whether the facts alleged in the

---

[38] *Iqbal*, 556 U.S. at 678.  *See also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("[A] court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." (quotations omitted)); *Bartow v. Cambridge Springs SCI*, 285 Fed. Appx. 862, 863 (3d Cir. 2008) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (quotations omitted)).

[39] *Fowler*, 578 F.3d at 210 (internal quotations omitted).

[40] *Iqbal*, 556 U.S. at 678.

[41] *Id.* at 679 (citations and internal quotations omitted).

[42] *Fowler*, 578 F3d at 210-11; *Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004) (The court may also consider documents attached as exhibits to the complaint, any documents incorporated into the complaint by reference, and matters of the public record); *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)); see also *Sands*, 502 F.3d at 268.  (Yet "if the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint."); *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) (quoting *Coastal Power Prod. Co.*, 13 F. Supp. 2d 495, 497 (S.D.N.Y. 1998)).

complaint are sufficient to show that the plaintiff has a plausible claim for relief."[43]  The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[44]

## B.  Claims One through Ten:  Avoidance of Fraudulent Transfers under 11 U.S.C. § 548 and 6 Del. § 1304.

The parties dispute whether all of the fraudulent transfer elements have been satisfied, particularly § 548(a)(1)(B) and § 1304(a)(2).  The Trustee alleges that the Debtor received less than the reasonably equivalent value in exchange for the asset and money transfers.[45]  Furthermore, the Trustee alleges that on the dates the Debtor transferred the assets and money: (1) the Debtor was insolvent, or rendered insolvent; (2) engaged in a business transaction or was about to engage in a business transaction for which any property remaining with the Debtor was an unreasonably small amount of capital; or (3) intending to incur debts that would be beyond the ability of the Debtor to repay as such debts matured.[46]  The Defendants dispute each of the Trustee's allegations above.[47]

Section 548 governs claims for constructively fraudulent transfers.[48]  It requires the Trustee to allege:

> (1) the transfers were made within two years of the petition date; (2) the debtor received less than reasonably equivalent value in exchange of the transfers; and (3) the debtor either (a) was insolvent on the date that the

---

[43] *Fowler*, 578 F.3d at 211 (internal quotations omitted).

[44] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 361 (3d Cir. 2010).

[45] Second Amended Complaint at ¶¶ 88, 96, 104, 112, 120, 125, 135, 140, 145.

[46] *Id*. at ¶¶ 89, 97, 105, 113, 121, 126, 131, 136, 141, 146.

[47] *See* Motion to Dismiss.

[48] *See* 11 U.S.C. § 548.

transfers were made or became insolvent as a result of the transfers; or (b) was or was about to engage in a business or transaction for which any remaining property remaining with the debtor was an unreasonably small capital; or (c) intended or believed that the debtor would incur debts beyond the debtor's ability to pay; or (d) the debtor made the transfer or incurred the obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[49]

The Trustee seeks avoidance of fraudulent transfers pursuant to 6 Del. § 1304, the Delaware state law equivalent of 11 U.S.C. § 548.[50] Due to the fact that these two statutes contain equivalent substantive requirements, the Trustee applies the same argument he uses for § 548(a)(1)(B) to § 1304(a)(2)(A).[51] Likewise, Defendants argue that because the § 548(a)(1)(B) claim fails, there is "no need to determine whether the Second Amended Complaint meets the standards of Section 1304(a)(2)(A) or (a)(2)(B)."[52]

Claims of constructive fraud are evaluated under the notice pleading requirement of Fed. R. Civ. P. 8(a)(2).[53] To adequately plead a constructive fraud claim under this standard, "all that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the [Debtor was] insolvent."[54] The

---

[49] 11 U.S.C. § 548.

[50] Second Amended Complaint at ¶¶ 115-47.

[51] *Compare* 11 U.S.C. § 548 *with* 6 Del. § 1304.

[52] Motion to Dismiss at p. 7.

[53] *In re Pillowtex Corp.*, 427 B.R. 301, 310 (Bankr. D. Del. 2010) ("[C]ourts in this district have held that claims of constructive fraud (i.e., fraudulent transfers) are evaluated using Rule 8(a)(2)."); *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 495 (Bankr. D. Del. 2010) ("Furthermore, this Court takes the view that claims of constructive fraud, i.e., fraudulent transfers, are evaluated using Rule 8(a)(2).")

[54] *In re AgFeed USA, LLC*, 546 B.R. 318, 336 (Bankr. D. Del. 2016) ("A claim of constructive fraud… need not allege the common variety of deceit, misrepresentation, or fraud in the inducement… because the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent."); *Mervyn* 426 B.R. at 495 ("A fraudulent transfer complaint 'need only set forth facts with sufficient particularity to apprise the defendant fairly of the charges made against him.")

Trustee must do more than simply recite statutory elements, but he need only state facts with sufficient particularity to provide the defendant fair notice of the charges against him.[55]  Applying this principle, complaints simply identifying the dates, amounts, source, and the transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under the pleading standard of Rule 8(a)(2).[56]

Determining "reasonably equivalent value" and "insolvency," with respect to the second and third elements of constructive fraud, requires factual determinations discouraging a motion to dismiss while encouraging testing in the discovery process.[57] Disputes as to the actual value given in exchange for the transfer do not need to be decided on a motion to dismiss, so long as "the Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration."[58]

---

[55] *Mervyn*, 426 B.R. at 495; *AgFeed*, 546 B.R. at 336 (noting that when pleading a constructive fraud claim, "the Trustee must do more than simply allege the statutory elements of a constructive fraud action.")

[56] *AgFeed*, 546 B.R. at 337 (Bankr. D. Del. 2016) ("Here, the complaint identifies the date, amounts, source and transferee of each of the transfers…. At this stage of the proceedings, the Court concludes that the facts alleged by the Trustee are sufficient to support a claim for constructive fraud under section 548(a)(1)(B)."); *In re DVI*, WL 4239120 at *9 (Bankr. D. Del. Sept. 16, 2008) (finding the complaint sufficient because the Trustee identified the transfer by date and face amount and alleged that it was for no consideration, and thus less than a reasonably equivalent value); *Mervyn*, 426 B.R. at 495 (constructive fraud claim is adequately pleaded where the Debtor specified facts identifying the property and dates involved in the transaction, the value of the transfers made, the amount of money transferred, the source of the funds, and the transferee).

[57] *In re Green Field Energy Servs., Inc.*, No. 13-12783 (KG), 2015 WL 5146161, at *8 (Bankr. D. Del. Aug. 31, 2015) ("Given the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, '[t]he issue of "reasonably equivalent value" requires a factual determination that cannot be made on a motion to dismiss."); *In re Charys Holding Co., Inc.*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("Reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process."); *In re DBSI, Inc.*, 445 B.R. 344, 349 (Bankr. D. Del. 2011) ("Insolvency is generally a factual determination not appropriate for a motion to dismiss.")

[58] *In re FAH Liquidating Corp.*, 572 B.R. 117, 127 (Bankr. D. Del. 2017).

The same analysis applies to the Trustee's state law fraudulent transfer claims pursuant to 6 Del. § 1304(a)(2).[59]  Section 544(b) of the Bankruptcy Code "permits the trustee to step into the shoes of an existing unsecured creditor who could have avoided an action under state law."[60]  At the pleading stage, Rule 9(b)'s particularity requirement is not applicable to claims under § 1304(a)(2).[61]  Rather, the Trustee "need only meet the lower standards of Rule 8(a)(2)."[62]

In the case at hand, the Trustee alleges that the fraudulent transfers occurred between October 30, 2012 and February 13, 2014.  All transfers occurred within two years of the Petition Date, and pending adequacy of pleading with respect to the remaining elements, they are all potentially voidable.  Additionally, the Trustee identifies the transferor and transferee of each transaction.[63]  Therefore, this Court finds that the Trustee alleges sufficient factual information to meet the pleading requirements of both § 548(a)(1)(B) and § 1304(a)(2)(A).

---

[59] *In re Opus E., LLC*, 528 B.R. 30, 82 (Bankr. D. Del. 2015) ("The elements for avoidance of a fraudulent conveyance under Delaware law are essentially identical to those of section 548(a)(1)(B)."); *In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *5 (Bankr. D. Del. June 19, 2015) (considering both Delaware state law and Bankruptcy Code constructively fraudulent transfers together); *In re Am. Bus. Fin. Services, Inc.*, 471 B.R. 354 (Bankr. D. Del. 2012).

[60] *In re DBSI, Inc.*, 477 B.R. 504, 512-13 (Bankr. D. Del. 2012).

[61] *China Resource Products (U.S.A.) Ltd. v. Fayda Intern, Inc.*, 788 F. Supp. 815, 819 (D. Del. 1992) (Requirement that circumstances of fraud be pleaded with particularity does not apply to pleadings made pursuant to Delaware's Fraudulent Conveyance Act under which plaintiff need not prove actual or constructive fraud).

[62] *In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *5 (Bankr. D. Del. June 19, 2015).

[63] *See* Second Amended Complaint, Exh. F-G.

a. **Reasonably Equivalent Value – Section 548(a)(1)(B)(i) and Section 1304(a)(2).**

Defendants argue the Trustee fails to allege that the Defendants received less than the reasonably equivalent value for the alleged fraudulent transfers.[64]  The Trustee simply responds that, by alleging the Defendants received less than reasonably equivalent value for the transfers, he has met the pleading requirements under the "totality of the circumstances test" enumerated by the Third Circuit.[65]  Additionally, the Trustee argues that a factual determination, such as the fair market value of the alleged transfers, is not a proper issue to decide on a motion to dismiss.[66]

Determining reasonable equivalence "requires case-by-case adjudication," which depends on "all the facts of each case, an important element of which is market value."[67]  Other factors include whether the transaction was at arm's length, and whether the transaction was in good faith.[68]  Additionally, at this stage of the proceedings, the Trustee need only identify the transfer by date and face amount, and allege that it was for no consideration.[69]

On the issue of reasonably equivalent value, the Trustee has met the pleading requirements.  The Trustee has plead sufficient facts to show he is entitled to relief, and

---

[64] Answer to Amended Complaint at p. 5; Reply Brief at pp. 1-2.

[65] Answering Brief at 11; *see also* Second Amended Complaint at ¶¶ 88, 96, 104, 112, 120, 125, 130, 140, 145.

[66] *Id.* at p. 11.

[67] *Barrett v. Commonwealth Fed. Sav. and Loan Ass'n*, 939 F.2d 20, 23 (3d Cir. 1991).

[68] *In re R.M.L., Inc.*, 92 F.3d 139, 153 (3d Cir. 1996).

[69] *FAH Liquidating Corp.*, 572 B.R. at 127.

that the Defendants received less than reasonably equivalent value for each of the transfers.[70]

### b. Insolvency – Section 548(a)(1)(B)(ii) and Section 1304(a) and (b)(9).

Defendants next claim that the Trustee has not plead sufficient facts to demonstrate the Debtor was insolvent, or rendered insolvent, on all, or any, of the dates of the alleged transfers.[71]  The Trustee responds that, aside from the fact that the Debtor's insolvency is a "fact-intensive inquiry" not properly decided on a motion to dismiss, he has met the pleading requirements.[72]

It is true that "[i]nsolvency is a factual determination not appropriate for resolution in a motion to dismiss."[73]  Additionally, a bankruptcy trustee is generally afforded greater liberality in pleading fraud because he is a third-party outsider to the debtor's transactions.[74]  A trustee is "not required to include precise calculations evidencing balance sheet insolvency."[75]

The Trustee has met the pleading requirements.  Notwithstanding the fact that this issue is not appropriate for resolution in a motion to dismiss, the Trustee has specifically

---

[70] Second Amended Complaint at ¶¶ 88, 96, 104, 112, 120, 125, 130, 140, 145; *In re Oakwood Homes Corp.*, 340 B.R. 510, 525 (Bankr. D. Del. 2006) ("[T]he complaint identifies the transfers at issue and alleges that the Debtors received less than reasonably equivalent value for such transfers.  As such, dismissal is only appropriate if no set of facts would entitle the plaintiff to relief.")

[71] Opening Brief at p. 5; Reply Brief at pp. 2-3.

[72] Answering Brief at pp. 13-14.

[73] *In re DBSI, Inc.*, 455 B.R. 344, 349 (Bankr. D. Del. 2011).

[74] *In re Glencoe Acq., Inc.*, 12-12071 (KG), 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015).

[75] *Id.* (citing *DBSI, Inc.*, 455 B.R. at 349).

plead that the Debtor was insolvent, or was rendered insolvent at the time of the alleged transfers.[76]

### c.  Unreasonably Small Amount of Capital – Section 548(a)(1)(B)(iii) and Section 1304 (a)(2)(a).

Defendants also assert that the Trustee has similarly failed to meet the pleading requirements showing that Debtor was engaged, or was about to engage, in a business or transaction with an unreasonably small amount of capital.[77]   Echoing their previous arguments, Defendants dispute whether the Trustee has shown any facts evincing this, or whether the Trustee has shown any facts showing the Defendants are "insiders."[78]  The Trustee responds that the Debtor being insolvent is a reasonable inference for this Court to make based on the facts that the Debtor acquired BMTN's assets, was over-leveraged, continued to operate at a net loss between 2011 and 2012, and experienced a continuous decline in sales.[79]    A debtor has unreasonably small capital if "it cannot generate enough cash flow to sustain operations at the time of the transfer or obligation."[80]  Much like the insolvency inquiry, unreasonably small capital often turns on questions of fact, thus being inappropriate to decide on a motion to dismiss.[81]

---

[76] *See In re Glencoe Acq., Inc.*, 12-12071 (KG), 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015) (court allowed claim where Trustee alleged that, as a result of a fraudulent transfer, the Debtor "was insolvent or became insolvent…."); Second Amended Complaint at ¶¶ 89, 97, 105, 113, 121.

[77] Motion to Dismiss at pp. 5-6; Reply Brief at p. 3.

[78] *Id.*

[79] Answering Brief at p. 14.

[80] *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 552 (Bankr. D. Del. 2012).

[81] *Id.*

The Trustee has met the pleading requirements regarding this element of avoiding fraudulent transfers.  This Court agrees that it is reasonable to infer the Debtor was engaged, or was about to engage, in a business or transaction with an unreasonably small amount of capital from the facts the Trustee alleged – namely that the Debtor acquired BMTN's assets, was over-leveraged, continued to operate at a net loss between 2011 and 2012, and experienced a decline in sales.  At the very least, these allegations warrant discovery on this issue.[82]

### d.  Beyond Debtor's Ability to Pay – Section 548(a)(1)(B)(III) and Section 1304(a)(1)(b).

Lastly, Defendants argue the Trustee merely "parrot[s] the statute" and does not plead any facts which plausibly show Debtor believed it was incurring debts beyond its ability to pay.[83]  The Trustee responds that at this stage of the proceedings, he does not have to "provide proof of the Debtor's subjective intent," and that a "reasonable person could infer that the totality of the [t]ransfers and the leveraged acquisition of BMTN caused the Debtor's insolvency, left the Debtor with unreasonably small capital, and that at the time of the transfers, the Debtor believed that it would incur debts beyond its ability to pay."[84]

---

[82] *In re Green Field Energy Servs., Inc.*, No. 13-12783 (KG), 2015 WL 5146161, at *8 (Bankr. D. Del. Aug. 31, 2015) ("Given the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, '[t]he issue of "reasonably equivalent value" requires a factual determination that cannot be made on a motion to dismiss.'"); *In re Charys Holding Co., Inc.*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("Reasonable equivalent value is a fact intensive determination that typically requires testing through the discovery process."); *In re DBSI, Inc.*, 445 B.R. 344, 349 (Bankr. D. Del. 2011) ("Insolvency is generally a factual determination not appropriate for a motion to dismiss.")

[83] Opening Brief at p. 6.

[84] Answering Brief at p. 15.

To meet this element, the debtor must have made the transfer or incurred an obligation contemporaneous with an intent or belief that subsequent creditors would more than likely not be paid once their claims matured.[85]  However, the only requirement at this stage is "sufficient detail to apprise the defendant of the claim against it."[86]  Rule 9(b) "acknowledges that malice, intent, knowledge and other conditions of a person's mind may be alleged generally."[87]

The Trustee has met his burden of pleading sufficient facts which, accepted as true, plausibly give rise to relief.  In the Second Amended Complaint, the Trustee alleges the Debtor intended to incur debts beyond its ability to pay as such debts matured, detailed the relationship between Debtor and its subsidiaries, and alleged Debtor was insolvent at the time of transfers.[88]  At this stage of the proceedings, this is all that is required.[89]

Therefore, the motion to dismiss Claims One through Ten is denied.

## C.  Claims Eleven through Fifteen:  Avoidance of Preferential Transfers under 11 U.S.C. §§ 547 and 550.

Section 547 allows a trustee to avoid any transfer of an interest of the debtor in property, provided, in part, the transfer was "for or on account of an antecedent debt

---

[85] *See In re Vaso Active Pharm., Inc.*, 10-10855 CSS, 2012 WL 4793241, at *20 (Bankr. D. Del. Oct. 9, 2012).

[86] *In re DVI, Inc.*, 03-12656 (MFW), 2008 WL 4239120, at *8 (Bankr. D. Del. Sept. 16, 2008).

[87] *In re Glencoe Acq., Inc.*, 12-12071 (KG), 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015); Fed. R. Civ. P. 9(b).

[88] Second Amended Complaint at ¶¶ 16-82, 89, 97, 105, 113, 121.

[89] *In re Fedders N.A., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009) ("Because direct evidence of fraudulent intent is often unavailable, courts usually rely on circumstantial evidence to infer fraudulent intent…. The 'badges of fraud' that courts often refer to include, but are not limited to: (1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction.")

owed by the debtor before such transfer was made."[90]  An "antecedent debt" refers to a

debt that was "incurred before the debtor made the alleged preferential transfer."[91]  A

debt is "incurred" on the date which a debtor first becomes legally bound to pay.[92]

To survive a motion to dismiss, preference complaints must include "an identification

of the nature and amount of each antecedent debt and an identification of each alleged

preference transfer by date [of the transfer], name of the debtor/transferor, name of the

transferee, and the amount of the transfer."[93]  "In a case with multiple debtors, as here,

the [c]omplaint must sufficiently allege which debtor owed the antecedent debt and that

the same debtor made the preferential transfer."[94]

Defendants simply argue the Trustee has failed to identify any alleged antecedent

debt, and therefore the claims cannot stand.[95]  The Trustee relies heavily on *In re Oakwood*,

[96] emphasizing that the Second Amended Complaint details the nature of the antecedent

debts and provides the Defendants notice thereof.[97]  The Trustee points to the May 12,

2012 loan agreement between the Defendants (except for Broad Street) and Private Bank,

---

[90] 11 U.S.C. § 547(b).

[91] *In re Conex Holdings, LLC*, 518 B.R. 269, 277 (Bankr. D. Del. 2014).

[92] *Id.*

[93] *In re THQ Inc.*, No. 12-13398 (MFW), 2016 WL 1599798, at *3 (Bankr. D. Del. Apr. 18, 2016).

[94] *Id.*

[95] Opening Brief at p. 8; Answering Brief at p. 4.

[96] *In re Oakwood Homes Corp.*, 340 B.R. 510 (Bankr. D. Del. 2006); *see* Reply Brief at pp. 16-19.

[97] Answering Brief at pp. 9-16.

alleging the agreement permitted Defendants to "incur intercompany debt and provided parameters for repayment of the same."[98]

The Trustee does not meet the pleading standards with regards to ULC, BMT Acquisition, BMT-WA, and Graver.  The Trustee fails to show an antecedent debt which the Debtor incurred from these Defendants on a date prior to the transfers.[99]  The mere existence of the loan agreement, which *permits* Defendants to incur debt does not, in and of itself, allege or establish that these Defendants did, in fact, incur any antecedent debt.

Furthermore, *In re Oakwood* is distinguishable.  In *Oakwood*, a complaint stated that alleged preferential transfers arose out of a Loan Assumption Program ("LAP").  The complaint in that case described the debtor's role in the program to subsidize increasing defaults, the debtor's increasing reliance and use of the LAP, and the fact that that program resulted in the expenditure of a significant amount of debtor's cash.[100]  However, the central distinction in *Oakwood*, which the Trustee ignores, is the application of a notice pleading standard to preferential transfers in a pre-*Twombly* and *Iqbal* case.[101]  The *Oakwood* court held that where "the defendants counter that such information fails sufficiently to correlate the antecedent debt with each alleged transfer," the "specificity that the defendants would demand goes far beyond the requirements of notice pleading."[102]  Without more, this Court is unable to infer that the loan agreement and its

---

[98] *Id.* at p. 19.

[99] *See generally* Second Amended Complaint; *see also* Reply Brief.

[100] *Oakwood,* 340 B.R. at 516-18.

[101] *Id.*

[102] *Id.* at 522.

conditions establish the existence of any antecedent debts on behalf of Defendants ULC, BMT Acquisition, BMT-WA, and Graver.

Therefore, the motion to dismiss Claims Eleven and Thirteen through Fifteen is granted.

However, the Trustee alleges sufficient facts to support a claim for avoidance of preferential transfers with respect to Broad Street. The Trustee states the Debtor entered into a credit agreement with Broad Street and used a portion of the $3 million line of credit to purchase the delinquent notes from JPMorgan, thus establishing a debt incurred and owed to Broad Street.[103] The Trustee then provides the dates of the transfers, identifies and names Broad Street as the transferee, and describes the amounts, circumstances, and official records identifying the transfers.[104] This is consistent with the pleading requirements discussed above. Therefore the motion to dismiss Claim Twelve is denied.

### D. Claim Sixteen: Breach of Fiduciary Duties.

To state a cause of action under a breach of a fiduciary duty, a plaintiff must plead sufficient facts to support a plausible claim of the existence of a fiduciary duty, and that the fiduciary breached that duty.[105] To support a claim of the existence of a fiduciary

---

[103] Second Amended Complaint at ¶ 37.

[104] *Id*. at ¶¶ 37-40

[105] *In re Tropicana Entm't, LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014).

duty, a complaint must first allege sufficient facts of the Debtor's insolvency, making a party other than the shareholders the principal constituency injured by any breach.[106]

A fiduciary relationship is "a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another."[107]  The relationship must be a "dependency or a condition of superiority of one of the parties over the other" characterized by confidence and trust given by one party to another, and domination and influence exercised by one party over another.[108]  The finding of a fiduciary relationship is a factual inquiry that can arise in a variety of contexts.[109]  Courts are reluctant to create fiduciary relationships among parties that do not clearly qualify for them, but have consciously refused to delineate those situations where a fiduciary relationship might exist.[110]

Officers and directors owe a company the duties of care, loyalty, and to act in good faith.[111]  A claim for the breach of the duty of care requires "a showing of gross negligence which generally 'requires directors and officers to fail to inform themselves fully and in

---

[106] *Id*. at 471.

[107] *In re Am. Bus. Fin. Servs., Inc.*, 360 B.R. 74, 79-80 (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (D. Del. 2006).)

[108] *Id*. at 79-80; *In re Am. Bus. Fin. Servs., Inc.*, 457 B.R. 314, 322 (2011).

[109] *In re Stone & Webster, Inc.*, No. 00-2142 (PJW), 2009 WL 426118, at *4 (Bankr. D. Del. Feb. 18, 2009) ("Specifically, fiduciary duties have been imposed on contracting parties under the following circumstances: special or superior knowledge, confidentiality, assumption of control and responsibility, reliance, equitable interest, and alignment of interests.")

[110] *See Cont'l Ins. Co. v. Rutledge & Co.*, No. CIV. A. 15539, 1999 WL 66528, at *5 (Del. Ch. Jan. 26, 1999) (Though "Delaware law is stingy about affording fiduciary protections to those who do not clearly qualify for them," Delaware courts have "consciously refused to delineate those situations where a fiduciary relationship may exist.")

[111] *Opus*, 528 B.R. at 66.

Case 16-50027-CSS    Doc 92    Filed 04/10/18    Page 24 of 33

a deliberate manner.'"[112]  Whereas "[a] claim for breach of the duty of loyalty requires a showing that a fiduciary was on both sides of [a] transaction and that the transaction was not entirely fair to the company."[113]

Lastly, a claim for breach of the duty of good faith requires facts to demonstrate one of three actions: the fiduciary intentionally acted with a purpose other than that of advancing the best interests of the corporation; the fiduciary acted with the intent to violate applicable positive law; or the fiduciary intentionally failed to act in the face of a known duty to act, evidencing a conscious disregard for his duties.[114]

Defendants first argue the Trustee has not alleged sufficient facts to show the Debtor was insolvent.[115]  Defendants next aver that, even if the Debtor was or became insolvent due to Defendants' alleged misconduct, the facts purported by the Trustee do not establish a fiduciary relationship with the Debtor.[116]  Lastly, Defendants maintain that, assuming *arguendo* they owed fiduciary duties to the Debtor, the Trustee fails to sufficiently allege facts of a breach of those duties.[117]

---

[112] *Id*. at 66 (citing *In re Fedders N.A., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).)

[113] *Id.*

[114] *In re Midway Games Inc.*, 428 B.R. 303, 318 (Bankr. D. Del. 2010).

[115] Motion to Dismiss at pp. 9-11, 13-15; Reply Brief at pp. 5-6; *In re Tropicana Entm't, LLC*, 520 B.R. 455, 471 (Bankr. D. Del. 2014) ("The solvency or insolvency of [a] corporation determines which constituency has the right to pursue a… claim based on a breach of fiduciary obligation…. The fact that a firm has become insolvent after the acts that are alleged to have been fiduciarily improper does not convert a claim belonging to the corporation into one belonging to the creditors…. The later fact of insolvency does not transform the nature of the claim; it simply changes the class of those eligible to press the claim… by expanding it to include creditors.  Therefore, [a] plaintiff must allege either that [the] corporation was insolvent or became insolvent as a result of the misconduct.")

[116] Motion to Dismiss at pp. 9-11, 13-15; Reply Brief at p. 5-6.

[117] *Id.*

The Trustee adequately pleads facts demonstrating the existence of a fiduciary relationship and a subsequent breach only between the Debtor and Broad Street. The Trustee demonstrates that Broad Street was the sole member of the Debtor, shared the same managers and directors as the Debtor, and was a lender to the Debtor under the Credit Agreement and Amended Credit Agreement.[118] In light of these facts, Broad Street plausibly exercised dominion and control over Debtor, thus making Broad Street an "insider" as defined by 11 U.S.C. § 101(31)(B)(iii).[119] As a result, when the Debtor reached insolvency, Broad Street would then be obligated to exercise its control and influence over the Debtor for the benefit of the Debtor's creditors. Indeed, Broad Street may have acted akin to a single controlling shareholder since it was the sole member of the Debtor, and discovery would allow the true nature of its relationship with the Debtor to come to light.[120] Therefore, the Trustee has alleged sufficient facts to plausibly demonstrate that Broad Street owed fiduciary duties to the Debtor.

Next, the Trustee alleges Broad Street breached its fiduciary duties by executing a leveraged buyout which left the Debtor under-capitalized and over-leveraged, permitting the Debtor's remaining assets to be siphoned away for no consideration, and

---

[118] Second Amended Complaint at ¶¶ 20-24, 37-40.

[119] See *In re The Brown Sch.*, 368 B.R. 394, 401-02 (Bankr. D. Del. 2007) ("The Court concludes that the Trustee's allegation that the MDC entities, collectively, were controlling shareholders of the Parent Debtor is sufficient to state insider status and a fiduciary relationship." See, e.g., *In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 93 (D. Del. 2002) (stating that controlling shareholders are fiduciaries).")

[120] *In re Am. Intern. Group, Inc.*, 965 A.2d 763, 795 (Del. Ch. 2009), aff'd sub nom. *Teacher's Ret. System of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011) (stating, during a motion to dismiss under Rule 12(b)(6), the proper inquiry is whether the complaint as a whole states a reasonable inference that defendants breached their fiduciary duties).

sharing the same four directors as Longroad and the Debtor.[121]  The Defendants counter that, even assuming the Debtor was insolvent and Defendants did owe fiduciary duties to the Debtor, the Trustee has not plead sufficient facts to show a breach of those duties.[122]

Under the facts alleged, the Trustee has met the pleading requirements to show a breach of fiduciary duties.  Broad Street is the sole member of the Debtor, shared the same managers and directors as the Debtor, and was also a lender to the Debtor.[123]  Broad Street plausibly exercised control and influence over the Debtor, making Broad Street an "insider."[124]  Indeed, Broad Street may have been akin to a single controlling shareholder since there were no other members of the Debtor, and discovery would determine the exact nature of the relationship between Broad Street and the Debtor.[125]  Additionally, Broad Street entered into loan and credit agreements with the Debtor, indicating that Broad Street possibly stood to benefit on both sides of the transaction.[126]

Therefore, the Trustee has plead sufficient facts to meet the pleading requirements of Rule 12(b)(6), and thus the Motion to Dismiss Claim Sixteen, as it pertains to Broad Street, is denied.

---

[121] Second Amended Complaint at ¶¶ 18-19, 21, 24, 56-82; D.I. 77 at 25-28.

[122] Motion to Dismiss at pp. 9-16; Reply Brief at pp. 5-6.

[123] Second Amended Complaint at ¶¶ 21-26, 37-40.

[124] *See* 11 U.S.C. § 101(31)(B)(iii).

[125] See *In re The Brown Sch.*, 368 B.R. 394, 401-02 (Bankr. D. Del. 2007) ("The Court concludes that the Trustee's allegation that the MDC entities, collectively, were controlling shareholders of the Parent Debtor is sufficient to state insider status and a fiduciary relationship.")

[126] Second Amended Complaint at ¶¶ 37-40, 60-62.

However, the Trustee fails to plead sufficient facts showing a fiduciary relationship, and thus fiduciary duties, existed between the Debtor and ULC, BMT Acquisition, BMT-WA, and Graver.  The Trustee alleges Longroad acquired the assets of Graver "simultaneous with the Debtor's acquisition of BMTN's assets," the Debtor and the Defendants were co-borrowers under an agreement which permitted them to accrue intercompany debt, and the Debtor made asset transfers to the Defendants.[127]  Notably, the Trustee does not allege that, pursuant to the loan agreement, intercompany indebtedness did actually occur.[128]  Indeed, many of the Trustee's allegations are conclusory.[129]  These allegations do not support a supposition that ULC, BMT Acquisition, BMT-WA, or Graver owed a fiduciary relationship to the Debtor, and therefore there can be no breach.[130]  Consequently, Claim Sixteen, as it relates to ULC, BMT Acquisition, BMT-WA, and Graver, is dismissed for failure to state a claim.

## E.  Claim Seventeen:  Declaratory Relief to Pierce the Corporate Veil.

The Trustee requests declaratory relief to pierce the corporate veil, only with respect to Longroad.[131]  Defendants aver in their opening brief that, to the extent this claim applies to ULC, Broad Street, BMT Acquisitions, BMT-WA, and Graver, it should be

---

[127] *Id*. at ¶¶ 36-40, 51-57, 61-73.

[128] *See* Second Amended Complaint; *see also* Answering Brief.

[129] The Trustee alleges that the Defendants are insider affiliates of the Debtor, that Longroad exercised dominion and control over the Defendants, and that Longroad acquired the assets of the Debtor's affiliates.

[130] The Trustee's allegations suffer from the same defects as the allegations in *In re Conex Holdings, LLC*, 514 B.R. 405 (Bankr. D. Del. 2014) – a case which Defendants use in support of their argument.  In *Conex*, the central failures of the complaint included lumping the individual defendants together in attempting to explain wrongdoing, supplying few specific facts as to each defendant's wrongdoing, and using conclusory language in lieu of factual support throughout the remainder of the complaint.

[131] Second Amended Complaint at ¶¶ 210-18.

"summarily dismissed for failure to allege specific facts or, in other words, for failure to state a plausible claim."[132]

The Trustee fails to state a plausible claim for which relief can be granted with respect to Defendants.  Claim Seventeen explicitly pertains only to Longroad, and none of the Defendants.[133]  Therefore, because Claim Seventeen does not even mention Defendants, it will be dismissed for failure to state a claim, to the extent it applies to Defendants.

## F.  Claim Eighteen:  Turnover of Payments Due and Owed as Property of the Estate under 11 U.S.C. § 542.

Section 542 of the Bankruptcy Code requires an entity in possession of property of the estate to deliver the property or its value to the trustee.[134]  Adequately pleading a claim under Section 542 requires the Trustee to state sufficient facts supporting a plausible claim that the property is in the control, possession, or custody of a noncustodial third party during the case.[135]  The property constitutes "property of the estate" if the property is of the type that the trustee could use, sell or lease under Section 363 of the Bankruptcy Code, or that the debtor could exempt under Section 552 of the Bankruptcy Code; and the property is of consequential value or benefit of the estate.[136]

"Property of the estate" is generally defined under Section 541 of The Bankruptcy Code.  Section 541(a) states that:

---

[132] Opening Brief at p. 16.

[133] *See* Second Amended Complaint at ¶¶ 210-18.

[134] *See* 11 U.S.C. § 542.

[135] *Id*.

[136] 5 Collier on Bankruptcy, ¶ 542.03, ¶ (16th ed. 2010); *See also* 11 U.S.C. § 363; 11 U.S.C. § 552.

> The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all of the following property, wherever located and by whomever held: [ ] all legal or equitable interests of the debtor in property as of the commencement of the case.[137]

This definition envisions a broad range of property included in the estate, including the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.[138]  Property of the estate does not apply to property which has been fraudulently or preferentially transferred before the bankruptcy filing, because such property does not become "property of the estate until it has been recovered by the estate."[139]

"Turnover is not appropriate where there is a legitimate dispute over ownership of the property."[140]  On the petition date, a bankruptcy estate is created to hold "all legal or equitable interests of the debtor in property as of the commencement of the case."[141] The petition date sets a "date of cleavage" and "establishes the moment at which the parties' respective rights in property must be determined."[142] The scope of an estate's property interests is broad."[143]

---

[137] 11 U.S.C. § 541(a)(1).

[138] *US v. Whiting Pools*, 462 US 198 (1983) ("[The] estate shall include all legal or equitable interests of the debtor and property as of the commencement of the case, is intended to include any property made available to the estate by other persons of the Act such as § 542(a).  In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings.")

[139] Collier, *supra* note 94 ¶ 542.03.

[140] *In re Conex Holdings, LLC*, 518 B.R. 792, 801 (Bankr. D. Del. 2014).

[141] *Id.* at 801.

[142] *Id.*

[143] *Id.*

The commencement of this proceeding began on the Petition Date, when the Debtor filed a voluntary petition for Chapter 7 relief as permitted under Section 311 of the Bankruptcy Code.[144]  All of the asset transfers for which the Trustee seeks turnover occurred prior to the Petition Date, thus before creation of the estate.[145]  Since no estate existed for purposes of turnover at the time the assets were transferred, the assets cannot possibly be property of the estate within the statutory language of 11 U.S.C.    § 541.[146]  The Trustee has not alleged – and cannot allege – that the property is "property of the estate."[147]

Therefore, the Trustee fails to meet the pleading requirements and Claim Eighteen is dismissed.

## G.  Claim Nineteen:  Disallowance under 11 U.S.C. § 502.

Defendants move to dismiss Claim Nineteen for disallowance under Section 502(d), arguing that this cause of action does not exist until the resolution of the alleged preferential and fraudulent transfers.[148]

Disallowing a claim under Section 502(d) requires a judicial determination that a claimant is liable.  A debtor wishing to avail itself of this section's benefits must first

---

[144] D.I. 1 ("Complaint").

[145] *See generally* Second Amended Complaint.

[146] *See* 11 U.S.C. § 541; Property of the estate includes the debtor's interests as of the commencement of the case.  Because the alleged transfers occurred prior to the commencement of this case, and because the "date of cleavage" was set for February 14, 2014, the Trustee cannot possible satisfy the second required element for turnover.

[147] Second Amended Complaint at ¶¶ 220-22.

[148] Motion to Dismiss at p. 17.

obtain a judicial determination on the complaint.[149]    Where the debtor "has merely commenced an adversary proceeding," the Court will hold that Section 502(d) is inapplicable.[150]

The Trustee has not obtained a judicial determination on the preference complaint – a prerequisite to a claim under Section 502(d).  Therefore, The Trustee fails to adequately plead a claim under Section 502(d).  Consequently, Claim Nineteen is dismissed.

## H.  Leave to File an Amended Complaint.

The Trustee requests, pursuant to Federal Rule of Civil Procedure 15(a), that the Court allow leave to file a third amended complaint should the Court determine the Second Amended Complaint is deficient.[151]    The Trustee states, if granted leave to amend, he would plead facts to demonstrate the Defendants exercised sufficient dominion and control over the Debtor to support a finding that the Defendants were insiders that owed a fiduciary duty to the Debtor; specify the actions the Defendants took that breached their fiduciary duties to the Debtor; include additional causes of action for piercing the corporate veil, alter ego liability, and aiding and abetting breach of fiduciary duties; and

---

[149] *In re Ultimate Acq. Partners, L*, NO. 11-10245 MFW, 2012 WL 1556098, at *3 (Bankr. D. De. May 1, 2012) (stating that a debtor wishing to avail itself of the benefits of § 502(d) must first obtain a judicial determination on the preference complaint, and denying a Trustee a § 502(d) claim where he had not yet obtained any judicial determination of opposing party's liability); *In re Lids Corp.,*260 B.R. 680, 684 (Bankr. D. Del. 2001) (denying claim for disallowance where debtor who had only commenced an adversary proceeding to recover an alleged preference from creditor but had not yet obtained a judicial determination on its complaint, and thus could not claim disallowance under § 502(d)).

[150] *Lids*, 260 B.R. at 684.

[151] Answering Brief at p. 30.

correct any other deficiencies the Court may find in the complaint.[152]  Defendants do not object to the Trustee's request for leave to file an amended complaint.[153]

Rule 15(a) provides that leave to amend "shall be freely granted when justice so requires."[154]  The Third Circuit has held that leave to amend "must generally be granted unless equitable considerations render it otherwise unjust."[155]  Factors justifying a denial of leave to amend include undue delay, bad faith, futility, unwarranted burdens on the court, and the unfair burden on the opposing party.[156]  "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."[157]

The record does not suggest that the Trustee acted in bad faith or with improper motive.  The only justification the Trustee offers for his request is that discovery had only just begun on January 24, 2018 with respect only to Longroad.[158]  Therefore, the only potential grounds to deny leave to amend are undue delay, futility, and the unfair burden on the opposing party.  The Trustee had over one year between filing the Amended Complaint and the Second Amended Complaint, affording him ample time to find, develop, and adequately plead facts to support the causes of action enumerated in the

---

[152] *Id*.

[153] *See* Motion to Dismiss.

[154] Fed. R. Civ. P. 15(a); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006).

[155] *Maersk, Inc.*, 434 F.3d 196 at 204.

[156] *Id*. at 203.

[157] *Id*. at 204.

[158] Status Report at p. 1.

second amended complaint.  Since the Trustee had ample time to gather the pertinent facts to support his claims, the Court denies leave to amend for a third bite at the apple as being futile.

## <u>CONCLUSION</u>

For the abovementioned reasons, this Court will grant the motion to dismiss with prejudice, in part, and deny the motion to dismiss with prejudice, in part.  Specifically, the Court will grant the motion to dismiss Claim Eleven, Claims Thirteen through Fifteen, Claim Sixteen as it relates to ULC, BMT Acquisition, BMT-WA, and Graver, Claim Seventeen, Claim Eighteen, and Claim Nineteen because the Trustee has not pleaded sufficient facts in support of his allegations.  The Court will deny the motion to dismiss Claims One through Ten, Claim Twelve, and Claim Sixteen as it relates to Broad Street, because the trustee has plead sufficient facts to support plausible claims.  The Court denies the Trustee leave to file a third amended complaint.  An order will be issued.